UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| THE PLANE EXCHANGE, INC., <br><br> Plaintiff, <br><br> v. <br><br> PAUL FRANCOIS, a natural person, <br><br> Defendant. | CIV. NO. 2:14-00784 WBS KJN <br><br> <u>MEMORANDUM AND ORDER RE: MOTION FOR SUMMARY JUDGMENT</u> |

----oo0oo----

Plaintiff The Plane Exchange, Inc. ("TPX") filed a Complaint for declaratory relief against defendant Paul Francois related to a controversy arising out of the sale of a 1968 Beechcraft V35A aircraft. (Docket No. 2.) In response, Francois filed six counterclaims and TPX asserted several affirmative defenses. (Docket Nos. 6, 15.) Pursuant to Federal Rule of Civil Procedure 56, defendant now moves for partial summary

judgment.

I.   Factual and Procedural History

TPX is an aircraft broker and dealer. (Francois Decl. ¶ 1 (Docket No. 31).) Francois is an Airline Transport Pilot and a former U.S. Navy carrier pilot. (Id.) On November 23, 2015, Francois purchased from TPX a 1968 Beechcraft Bonanza aircraft for $93,000.00 for personal use. (Id. ¶¶ 3, 5.)

Francois inquired about purchasing the aircraft after seeing an advertisement for the aircraft on TPX's website. (Id. ¶ 6.) The advertisement described the aircraft as a "truly one-of-a-kind Turbo Bonanza"--the only one to have a 380hp Turbo engine installed. (Id. Ex. B.) It noted that the aircraft had 2,410 total airframe hours and a useful load of 1,600 pounds. (Id.) Due to its larger engine, the advertisement disclosed that the aircraft had an Experimental Exhibition Airworthiness Certificate. (Id.) The advertisement also disclosed that "[t]he original logbooks were lost when the bank repossessed the aircraft, but prior owners have verified times and new logbooks have been created." (Id.) Lastly, the advertisement contained a disclaimer stating: "All specifications and representations are believed to be accurate to the best knowledge of the seller; however, it is the buyer's responsibility to verify all information prior to purchasing this Beechcraft Bonanza V35A Turbo 380hp." (Id.)

In response to the advertisement, Francois contacted TPX to negotiate a purchase price and to arrange for an inspection and flight-check of the aircraft. (Vincent Decl. ¶ 3 (Docket No. 33-5).) Prior to the flight-check, TPX provided

2

1  Francois with online access to the aircraft's complete
2  documentation, including its maintenance and repair records,
3  airworthiness information, operating limitations, current weight
4  and balance, and registration and ownership history.  (Id. ¶ 4.)
5  The operating limitations made clear that the aircraft was
6  limited to exhibition use.  (Id. ¶ 5.)  The Senior Vice President
7  of TPX, Mitch Adams, informed Francois that he had purchased the
8  aircraft from a Bank that had repossessed the aircraft and that
9  the aircraft's logs were missing.  (Adams Decl. ¶ 4 (Docket No.
10 33-4).)  He also informed Francois of some problems he had while
11 flying the aircraft and repairs that needed to be done.  (Id.
12 ¶¶ 5-6.)
13          During the flight-check, the President of TPX, Craig
14 Vincent, and Francois flew the aircraft for two hours.  (Id. ¶
15 6.)  Vincent walked Francois through the narrative history of the
16 aircraft, a detailed physical inspection, and described how he
17 had estimated the total airframe hours since the log books had
18 been destroyed.  (Id. ¶¶ 6-7.)  Vincent states that Francois
19 "acted at all times as if he was in a rush."  (Id. ¶ 6.)
20 Francois declined to hire a mechanic to conduct a pre-purchase
21 inspection of the aircraft despite Vincent's alleged verbal
22 recommendation that he do so.  (Id. ¶ 10.)
23          In January 2014, Francois wrote to TPX requesting that
24 it accept the return of the aircraft and re-pay Francois $89,000
25 in cash.  (Id. Ex. E.)  In April 2014, Francois served TPX with a
26 Notice of Violation of Consumer Legal Remedies Act and Demand for
27 Remedy.  (Francois Decl. ¶ 18, Ex. G.)  Francois claimed that TPX
28 represented the aircraft as having 2,410 total airframe hours

3

1  when it really had somewhere between 2,977 and 5,000 total
2  airframe hours.  (Id.)  Further, TPX claimed in its advertisement
3  that the aircraft had a useful load of 1,600 pounds but Francois'
4  supplementary weight report, conducted by Arapahoe Aero on
5  December 23, 2013, revealed it had a useful load of only 879
6  pounds.  (Id.)
7           In its Complaint for declaratory relief, TPX seeks
8  relief under the Declaratory Judgment Act, 28 U.S.C. § 2201(a),
9  and Federal Rule of Civil Procedure 57.  TPX seeks a judicial
10 declaration that (1) Francois' continuing claims that he is
11 entitled to rescission of the aircraft's purchase are without
12 merit; (2) TPX has not breached any contract or warranty
13 obligation owed to Francois (3) TPX put Francois in possession of
14 all appropriate information about the aircraft prior to his
15 decision to purchase it and/or disclosed all material facts
16 concerning the aircraft's airworthiness; (4) TPX did not
17 advertise the aircraft in any way that was false or misleading to
18 a reasonably prudent purchaser of private aircraft; and (5) TPX
19 took reasonable and timely action to correct the useful load
20 reported in earlier online listings.  (Compl. ¶ 23.)  Francois
21 now moves for summary judgment as to the second and fourth
22 issues.
23          Francois filed six counterclaims for (1) breach of
24 contract; (2) fraud and deceit; (3) intentional
25 misrepresentation; (4) negligent misrepresentation; (5) violation
26 of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ.
27 Code § 1770; and (6) rescission.  (Francois Counter-Compl. at 6
28 (Docket No. 6).)  Francois now moves for summary judgment on the

4

first and fifth counterclaims.

In its answer to Francois' counterclaims, TPX asserted several affirmative defenses. (TPX Answer at 2-3 (Docket No. 15).) Francois now moves for summary judgment on TPX's first, second, and sixth affirmative defenses for failure to state a cause of action, lack of standing, and no reasonable reliance.

II. Evidentiary Objections

On a motion for summary judgment, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). TPX raises eight evidentiary objections to portions of Francois' expert witness report on grounds of speculation, relevance, prejudice, and lack of personal knowledge. (Docket No. 33-3.)

Objections to evidence on the ground that the evidence is irrelevant, speculative, or constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself. See Burch v. Regents of the Univ. of Cal., 433 F. Supp. 2d 1110, 1119-20 (E.D. Cal. 2006). A court can grant summary judgment only when there is no genuine dispute of material fact. It cannot rely on irrelevant facts, and thus relevance objections are redundant. Instead of objecting, parties should argue that certain facts are not material. Similarly, statements based on speculation, improper legal conclusions, or personal knowledge are not facts and can only be considered as arguments on a motion for summary judgment. Instead of challenging the admissibility of this evidence, lawyers should challenge its sufficiency. TPX's objections to Francois' expert witness report on these

grounds are superfluous and the court therefore overrules them.

TPX also raises six evidentiary objections to portions of Francois' declaration.  (Docket No. 33-2.)  Objections one through five are overruled for the same reasons articulated above.  In its sixth objection TPX argues that Francois' statement that "the FAA informed me that the Aircraft was not airworthy at the time TPX sold it to me" is hearsay to the extent that it is offered to prove the aircraft was not airworthy at the time of sale or thereafter.  (Id. ¶ 6 (citing Francois Decl. ¶ 14).)

"Hearsay 'is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.'"  Wagner v. County of Maricopa, 747 F.3d 1048, 1056 (9th Cir. 2013) (quoting Fed. R. Evid. 801(c)).  A moving party's affidavits must be free of hearsay because "[v]erdicts cannot rest on inadmissible evidence and a grant of summary judgment is a determination on the merits of the case."  Burch, 433 F. Supp. 2d at 1121.

Francois argues that his statement does not constitute hearsay because the "FAA's statement is a verbal act that carries an independent legal significance or effect, namely it was part of the FAA's determination to ground the Aircraft because it was not in compliant airworthy condition."  (Francois Reply at 4 (Docket No. 34).)  However, Francois has not attempted to admit FAA documents finding the aircraft to be not airworthy or rejecting the Form 337.  Instead, Francois offers only his own declaration in which he states that the FAA found the aircraft not airworthy, grounded the aircraft, and refused to approve the

Form 337 submitted by TPX. (Francois Decl. ¶¶ 14-15.) Francois thus offers an out-of-court statement made by the FAA for the truth of the matter asserted--to prove that the aircraft was not airworthy. Accordingly, the court must sustain TPX's objection and find that this is improper hearsay evidence.

III. Discussion

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that could affect the outcome of the suit, and a genuine issue is one that could permit a reasonable jury to enter a verdict in the non-moving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact and can satisfy this burden by presenting evidence that negates an essential element of the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Alternatively, the moving party can demonstrate that the non-moving party cannot produce evidence to support an essential element upon which it will bear the burden of proof at trial. Id.

Once the moving party meets its initial burden, the burden shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting then-Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita

1  Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).
2  "The mere existence of a scintilla of evidence . . . will be
3  insufficient; there must be evidence on which the jury could
4  reasonably find for the [non-moving party]."  Anderson, 477 U.S.
5  at 252.
6          In deciding a summary judgment motion, the court must
7  view the evidence in the light most favorable to the non-moving
8  party and draw all justifiable inferences in its favor.  Id. at
9  255.  "Credibility determinations, the weighing of the evidence,
10 and the drawing of legitimate inferences from the facts are jury
11 functions, not those of a judge . . . ruling on a motion for
12 summary judgment . . . ."  Id.
13      A. Breach of Contract & Warranty
14          Francois seeks summary judgment on TPX's declaratory
15 relief claim that it did not breach any contract or warranty
16 obligation and on his counterclaim for breach of contract.
17         1. Breach of Contract
18          A cause of action for "breach of contract requires a
19 pleading of (1) the contract, (2) plaintiff's performance or
20 excuse for non-performance, (3) defendant's breach, and (4)
21 damage to plaintiff."  Acoustics, Inc. v. Trepte Constr. Co., 14
22 Cal. App. 3d 887, 913 (2d Dist. 1971).  Francois alleges that he
23 entered into a contract for the purchase of an airworthy aircraft
24 with 2,410 total hours and a useful load of 1,600 pounds, that he
25 performed under the agreement by paying the agreed amount of
26 $93,000.00, and that TPX breached by delivering an aircraft with
27 more than 5,000 total hours and a useful load of only 879 pounds.
28 (Francois Mem. at 6 (Docket No. 30); Francois Counter-Compl. ¶¶

1   11-12.)

2   The contract in this case was primarily oral and the
3   only writing evidencing the agreement is the bill of sale
4   transferring title of the aircraft.  (Compl. Ex. A, Ex. C; TPX's
5   Opp'n to Mot. for Summ. J. ("Opp'n") at 5 (Docket No. 33).)
6   There is a genuine dispute of fact as to whether the contract was
7   for an aircraft with 2,410 total hours and useful load of 1,600
8   pounds, as was advertised.

9   "Trade circulars, catalogs and advertisements are
10  uniformly regarded as mere preliminary invitations which create
11  no power of acceptance in the recipient."  Foremost Pro Color,
12  Inc. v. Eastman Kodak Co., 703 F.2d 534, 539 (9th Cir. 1983).
13  Thus, even though the advertisement represented the aircraft as
14  having 2,410 total hours and a useful load of 1,600 pounds, TPX
15  argues that it made clear that these were not the terms of the
16  contract.  First, the advertisement itself disclosed that the
17  "original logbooks were lost when the bank repossessed the
18  aircraft" and that "it is the buyer's responsibility to verify
19  all information prior to purchasing this Beechcraft Bonanza V35A
20  Turbo 380hp."  (Francois Decl. Ex. B.)  Second, during phone
21  conversations and the in-person flight check, Vincent allegedly
22  informed Francois that the Hobbs meter was replaced in 1997, when
23  the aircraft had 1300 hours on it, and that TPX had estimated the
24  total hours of 2,410 based on a conversation with a prior owner.
25  (Vincent Decl. ¶ 7.)

26  With respect to the useful load of the aircraft,
27  Vincent alleges that he informed Francois prior to the purchase
28  that there was a typographical error in the advertisement and the

9

1  aircraft had a useful load of only 1,400 pounds.  (Vincent Decl.
2  ¶ 8.)  Rick Eckert, a certified Airframe and
3  Powerplant/Inspection Authorization mechanic, had weighed the
4  aircraft for TPX and certified the useful load as 1,400 pounds.
5  (Id. ¶ 8, Ex. B "Aircraft Weight Report.")  The original report
6  was placed inside the aircraft and given to Francois prior to the
7  purchase of the aircraft.  (Id.; McCardell Decl. Ex. G (Docket
8  No. 32).)

9       Even if TPX made clear prior to purchase that the
10 useful load was 1,400 pounds, Francois argues that TPX still
11 breached this contractual term.  Relying on the Arapahoe Aero
12 weight and balance report that he commissioned after purchasing
13 the aircraft, Francois alleges that the useful load was only 879
14 pounds.  (McCardell Decl. Ex. A at 25.)  However, TPX contends
15 that the gross weight used by Arapahoe Aero was incorrect because
16 it "was based on the original manufacturer weight (3400) and did
17 not take into account the modifications done to the Plane in the
18 80's."  (Vincent Decl. ¶ 11.)  Prior owners allegedly informed
19 TPX that modifications to the aircraft had increased the weight
20 to 3,800 pounds and the Arapahoe Aero report did not take this
21 into account.  (Id.)

22       The fact that the FAA grounded the aircraft several
23 months after the purchase does not clarify this issue.  On
24 January 17, 2014, TPX submitted a Form 337 for major repairs and
25 alterations to the FAA in an effort to clarify the useful load
26 discrepancies.  (Id.; Francois Decl. ¶ 13, Ex. F.)  In response,
27 the FAA grounded the aircraft.  (Francois Decl. ¶ 14.)  Francois
28 states in his declaration that "[d]uring the process of making

10

the Aircraft Airworthy again, the FAA refused to approve the Form 337 submitted by TPX, and as a result the Aircraft must be operated at the lower useful load of 879 pounds." (Id. ¶ 15.) He states that he "did not receive a written response from the FAA approving a higher useful load other than the Arapahoe Aero weight and balance calculation." (Id.) Francois provided no documentary evidence that the FAA rejected the Form 337. Moreover, a failure to respond to a request for approval of a higher useful load is not equivalent to adopting the Arapahoe Aero weight of 879 pounds and rejecting the TPX weight of 1,400 pounds.[1]

Viewing all evidence in the light most favorable to the non-moving party, the court must find that there is a genuine dispute of fact as to the terms of the oral contract and whether TPX breached this contract. "If the terms of a contract are ambiguous"--as is the case here--"determining the contract's terms is a question of fact for the trier of fact, based on 'all credible evidence concerning the parties' intentions.'" Alexander v. Codemasters Grp. Ltd., 104 Cal. App. 4th 129, 146

---

[1] In his reply, Francois also makes the alternative argument that according to TPX's Complaint, the parties agreed that the useful load was 1,540 pounds. (Francois Reply at 7; see Compl. ¶ 11 ("Defendant was also informed by Plaintiff before he flew the Plane that its useful load was 1540 lbs. and not 1600 lbs. as had been erroneously reported in one of the earlier on line listings.").) Francois argues that Vincent's declaration, which states that the useful load was 1,400, constitutes an admission that TPX delivered to Francois an aircraft with a much lower useful load than what the parties allegedly agreed on, as the issue is framed by the allegations in TPX's Complaint. (Francois Reply at 7.) It appears to the court that there was a typographical error in the Complaint. Moreover, even if this was not a typographical error, there is still a factual dispute as to whether TPX breached and whether the breach was material.

11

(5th Dist. 2002) (citation omitted); see also Treadwell v. Nickel, 194 Cal. 243, 261 (1924) ("When the contract relied on is oral, its interpretation in the first instance is a question of fact to be determined by the jury."). Accordingly, the breach of contract claim is a question for the jury and the court must deny Francois' motion for summary judgment.

2. Breach of Warranty

"Unless excluded or modified, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Cal. Com. Code § 2314(1). To be merchantable, goods must be "fit for the ordinary purposes for which such goods are used." Id. at § 2314(2)(c). "[L]iability for an implied warranty does not depend upon any specific conduct or promise on [the seller's] part, but instead turns upon whether [the] product is merchantable under the code." Hauter v. Zogarts, 14 Cal.3d 104, 117 (1975).

Francois argues that TPX breached the implied warranty of liability because the aircraft was allegedly not airworthy at the time of sale. (Francois Mem. at 7.) Francois relies first on the expert witness report produced by Gerald McCardell, the director of maintenance at Woodland Aviation, Inc. McCardell states that "it is my expert opinion that at the time the Aircraft was sold to Mr. Francois, it was not in airworthy condition." (McCardell Decl. ¶ 8.) McCardell based his finding on research he conducted that allegedly revealed that approximately fifty-four "Airworthiness Directives issued by the FAA applicable to the Aircraft existed and required verification,

12

inspection, and disclosure at the time the Aircraft was sold to Mr. Francois."  (Id.)

McCardell, however, did not physically inspect the aircraft.  (Id. Ex. A at 8.)  Moreover, McCardell acknowledged that the aircraft was found to be airworthy by Procraft Aviation, a Federal Aviation Administration ("FAA") certified repair station on December 18, 2012, and the aircraft was not required to be inspected again until approximately one month after Francois purchased the aircraft.  (Id. ¶ 8.c, Ex. A at 12; see also Vincent Decl. ¶ 14.A.)  While McCardell argues that the Procraft Aviation certification "was not done completely" as it looked at only eleven Airworthiness Directives rather than the full list of fifty-four, TPX argues that this does not demonstrate that the aircraft was not airworthy or the certification improper.  (McCardell Decl. ¶ 8.)

In addition to expert testimony, Francois states that the FAA itself determined that the aircraft was not airworthy at the time of purchase.  (Francois Decl. ¶¶ 13-15.)  However, as discussed above, this is improper hearsay evidence on which the court may not rely, see supra Part II.

The court must therefore deny Francois' motion for summary judgment on TPX's claim for declaratory relief for no breach of contract or warranty and Francois' breach of contract counterclaim.

   B. False or Misleading Advertisement

Francois next moves for summary judgment on TPX's claim that it did not advertise the aircraft in any way that was false or misleading.  Francois contends that the advertising was false

and misleading because, according to his expert and supplemental aircraft weight report, the aircraft had more than 2,410 total hours and could carry less than a 1,600 pound load. (Francois Mem. at 7.) However, as is discussed above, the advertisement also disclosed that the original logbooks were lost and though all representations were believed to be accurate, it was the buyer's responsibility to verify all information. This evidence sufficiently raises a dispute as to whether the advertisement was false or misleading. Accordingly, the court denies Francois' motion for summary judgment.

C. Violation of California Consumer Legal Remedies Act

Francois moves for summary judgment on his fifth counterclaim that TPX violated the CLRA. "The Legislature enacted the CLRA in 1970 to provide individual consumers with a remedy against merchants employing certain deceptive practices in connection with the sale of goods or services, noting the difficultly consumers faced proving a fraud claim." Nelson v. Pearson Ford Co., 186 Cal. App. 4th 983, 1021 (4th Dist. 2010). The statutory scheme is to be "liberally construed" to "protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." Cal. Civ. Code § 1760.

The CLRA prescribes twenty-three "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Id. § 1770. The prescribed acts include misrepresenting the source or certification of goods,

14

representing that goods have characteristics, uses or benefits that they do not have, advertising goods with intent not to sell them as advertised, and misrepresenting that a good has been supplied in accordance with a previous representation. Id. Goods are defined as "tangible chattels bought or leased for use primarily for personal, family, or household purposes." Id. § 1761. A consumer is "an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes." Id.

Unlike the federal Magnuson-Moss Warranty Act, "which defines consumer products based on how they are 'normally used,'" the CLRA defines consumer products based on "the purposes for which they are actually bought." Bristow v. Lycoming Engines, Civ. No. 06-1947 LKK GGH, 2007 WL 1106098, at *8 (E.D. Cal. Apr. 10, 2007). In Bristow, the court explicitly rejected the argument that an aircraft engine cannot, as a matter of law, be for personal use. Id. (finding that the plaintiff had sufficiently alleged that he purchased and used his aircraft primarily for personal, family, or household purposes); see also Waypoint Aviation Servs. Inc. v. Sandel Avionics, Inc., 469 F.3d 1071, 1072 (7th Cir. 2006) (disagreeing with the district court's conclusion that an airplane cannot be a consumer product, even if its principal use is personal transportation or recreation, under the Magnuson-Moss Warranty Act).

In his declaration, Francois states that he purchased the aircraft "for personal use." (Francois Decl. ¶ 5.) TPX argues that an exhibition aircraft, which can only be flown in airshows or for TV and movie productions, cannot qualify as a

consumer product purchased primarily for personal purposes. (Opp'n at 13.) However, regardless of the aircraft's experimental exhibition certification, Francois purchased the aircraft with the intent to use it for personal purposes. Moreover, TPX has presented no evidence demonstrating Francois used the aircraft for commercial purposes or to generate revenue. Even more so than the aircraft engine purchased in Bristow, it is plausible that an exhibition aircraft would be purchased for personal use. The court therefore finds that Francois can, as a matter of law, assert a CLRA claim.

While a plaintiff need not plead reasonable or actual reliance under the CLRA, the courts apply a "reasonable consumer" standard. Buckland v. Threshold Enters., Ltd., 155 Cal. App. 4th 798, 810 (2d Dist. 2007), abrogated on other grounds by Kwikset Corp. v. Superior Court, 51 Cal. 4th 310, 337 (2011). A plaintiff must show that members of the public are likely to be deceived by the advertising. Id. "Whether a reasonable consumer would be deceived by a product label is generally a question of fact." Ham v. Hain Celestial Grp., Inc., 70 F. Supp. 3d 1188, 1193 (N.D. Cal. 2014).

As discussed above, it is disputed whether a reasonable consumer would be misled by TPX's advertisement, which represented the aircraft as having a certain number of airframe hours and a certain useful load yet also disclosed that the logs of the aircraft had been destroyed and it was the buyer's responsibility to verify all information, see supra Part III.B. The court therefore must deny Francois' motion for summary judgment.

### D. TPX's Affirmative Defenses

Francois moves for summary judgment of TPX's first, second, and sixth affirmative defenses. Under Federal Rule of Civil Procedure 8(c), an affirmative defense "is a defense that does not negate the elements of the plaintiff's claim, but instead precludes liability even if all of the elements of the plaintiff's claim are proven." Barnes v. AT&T Pension Benefit Plan-Non-bargained Program, 718 F. Supp. 2d 1167, 1173 (N.D. Cal. 2010) (citation omitted). "A defense which demonstrates that plaintiff has not met its burden of proof is not an affirmative defense." Zivkovic v. S. Cal. Edison Co., 302 F.3d 1080, 1088 (9th Cir. 2002); see also G&G Closed Circuit Events, LLC v. Nguyen, Civ. No. 10-00168 LHK, 2010 WL 3749284, at *5 (N.D. Cal. Sept. 23, 2010) ("[A]llegations that the Plaintiff cannot prove the elements of his claims are not affirmative defenses.").

In its first and second affirmative defenses, TPX claims that Francois' CLRA claim is legally insufficient and Francois lacks standing because the transaction complained of was not a consumer transaction. (TPX Answer at 2.) These are not true affirmative defenses but rather allegations that Francois cannot prove the elements of his CLRA counterclaim. However, the court is entitled to grant summary judgment on a defense or part of a defense. Fed. R. Civ. P. 56(a). As discussed above, Francois has established that this was a consumer transaction covered by the CLRA. The court must therefore grant Francois' motion for summary judgment on TPX's first and second defenses.

In its sixth affirmative defense TPX alleges that Francois' counterclaims for fraud, rescission, and violation of

17

the CLRA are barred by virtue of the fact that his alleged reliance on the alleged misrepresentations was unreasonable under the circumstances or was otherwise below the standard of a reasonable consumer.  Again, this is a defense, not an affirmative defense.  The court must deny Francois' motion for summary judgment on this defense as there are genuine disputes of fact as to whether a reasonable consumer would rely on TPX's advertisement.

        IT IS THEREFORE ORDERED that defendant Francois' motion for partial summary judgment (Docket No. 28) be, and the same hereby is, GRANTED on TPX's first and second defenses, and DENIED in all other respects.

Dated:  December 16, 2015

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

18